AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>IAN CHRISTOPHER BAUNACH<br><br>*Defendant(s)* | )<br>)<br>)  Case No.   8:22-mj-1978 AEP<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  Sept 2022 to on or about Oct 2022  in the county of  Hendry  in the  Middle  District of  Florida , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. §§ 5861(d) and 5871 | Possession of an unregistered firearm. |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____  #5198
*Complainant's signature*

Gary McKiever, ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/7/22

_____
*Judge's signature*

City and state:  Tampa, Florida    Anthony E. Porcelli, U.S. Magistrate Judge
*Printed name and title*

## INTRODUCTION

1. I, Gary McKiever, being duly sworn, state the following. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws.

2. I have been employed as a Special Agent with the ATF since 2010. I have conducted investigations involving violations of the National Firearms Act, the Gun Control Act, and other federal firearms offenses from 2014 through 2018. From 2019 to 2021, I was assigned as a Group Supervisor supervising investigations involving violations of the National Firearms Act and other federal firearms offenses. Since 2021, I have been assigned to the ATF Fort Myers Field Office as a Senior Special Agent.

3. In 2022 I was involved in an ATF operation in which I investigated unlawful and unregistered NFA silencers including solvent trap-type and oil filter-type silencers. The objective of the ATF operation was the recovery, administrative seizure, forfeiture of unlawfully manufactured, transferred, or possessed NFA silencers or suppressors.

4. This affidavit is submitted in support of a criminal complaint charging Ian C. Baunach ("**Ian Baunach**") with: Possessing a firearm which is not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5861(d) and 5871.

5. Under federal law, silencers, such as the type seized from **Baunach** and which are more fully described herein, must be registered according to 26 U.S.C. Chapter 53 (National Firearm Act). The Gun Control Act of 1968 (GCA), 18 U.S.C. § 921(a)(3), defines the term "firearm" as follows: "…(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."

6. In addition, the GCA defines the terms "firearm silencer" and "firearm muffler" to mean— "…any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication." *See* 18 U.S.C. § 921(a)(25).

7. The information contained in this affidavit is based in part or obtained from a review of investigative reports completed by law enforcement, conversations with law enforcement officers, and from my personal observations, my training and experience, and my involvement in the investigation to date. This affidavit does not set forth every fact resulting from the investigation; rather, it sets forth facts sufficient to establish probable cause to believe that the above offense has been committed and **Baunach** committed it. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related only in substance and in part, and

are not intended to be verbatim recitations. When a date is listed, I mean that the event occurred "on or about" that date. When a time period is listed, I mean that the event occurred "in or around" that time period.

## PROBABLE CAUSE

### Background of the Investigation

8. On or about September 30, 2022, at approximately 7:20 a.m., deputies with the Hendry County Sheriff's Office ("HCSO") were notified that **Baunach**'s ex-wife, Katie Baunach, was missing.

9. Law enforcement research revealed that in September 2022, the HCSO investigated a report filed by Katie Baunach that **Baunach** had physically abused one of her minor children. Katie Baunach received an injunction for domestic violence against **Baunach** on behalf of the minor child.

10. Law enforcement learned that Katie Baunach dropped her two minor children (shared in common with **Baunach**) off at a friend's residence at approximately 9:00 p.m. on or about September 29, 2022. Katie Baunach told the friend that **Baunach** said she (Katie Baunach) could come over to retrieve some of her personal items from **Baunach**'s residence located at 5990 Hidden Hammock Drive, Hendry County, Florida ("the Premises"). Katie Baunach then left the friend's residence. This was the last time Katie Baunach was seen alive.

11. On or about September 30, 2022, law enforcement arrived at the Premises to search for Katie Baunach. Law enforcement found Katie Baunach's

vehicle parked in the driveway of the Premises and observed Katie Baunach's purse inside of the vehicle. Law enforcement was not able to make contact with **Baunach** at the Premises at this time and departed. Law enforcement then returned a short time later and discovered that Katie Baunach's vehicle had been moved to a location on the street outside of the Premises.

12. Law enforcement applied for and received a search warrant authorized by the Honorable Judge James D. Sloan of the Circuit Court of the Twentieth Judicial Circuit of Florida to enter the Premises and search for Katie Baunach.

13. On or about September 30, 2022, at approximately 1:00 p.m., law enforcement executed the search warrant at the Premises and discovered evidence that a homicide had occurred there. Law enforcement then applied for and received a second search warrant to search for evidence relating to the possible homicide of Katie Baunach.

14. The same day, at approximately 4:15 p.m. hours, law enforcement returned to the premises to execute the second search warrant. Detectives searched **Baunach**'s vehicle which was parked in the garage of the Premises and applied luminol to the interior of the vehicle's trunk. Luminol is a chemical that reacts to the presence of blood by glowing blue. The interior of **Baunach's** vehicle trunk glowed blue after law enforcement applied the luminol.

15. When law enforcement searched a hallway located between the garage doorway and the foyer of the Premises, they observed signs of a physical struggle. There was damage to the wall and exposed screws in the wall where an object

appeared to previously be mounted. Law enforcement discovered a broken wall mounted mirror inside an office adjacent to the damaged wall.

16. Law enforcement treated the area with luminol which again glowed blue showing the presence of blood in the previously described hallway. The luminol also reacted and on the wall adjacent to the office door and on the office door frame. Law enforcement discovered a large surface area on three different walls of the Premises which glowed blue when treated with luminol.

17. Inside the office, law enforcement found a safe which contained Katie Baunach's wedding band and engagement ring. Law enforcement learned that Katie Baunach was wearing the wedding band and engagement ring when she departed her friend's house on or about September 29, 2022, to meet **Baunach** at the Premises.

18. Also located inside the safe was an AR-15 rifle upper receiver and thirteen silencers of various configurations, including five solvent trap-type silencers (Exhibits 1-4, and 7), two oil-filter type silencers (Exhibits 5 and 6), and six end cap-type silencers (Exhibit 8).

19. Law enforcement also found two Glock Model 27 .40 caliber pistols inside the Premises. One pistol was located in the office on a bookcase in a plastic bag. A second pistol with a threaded barrel capable of accepting one of the solvent trap-type silencers was removed from **Baunach's** person when he was arrested by the HCSO.

20. Law enforcement found three rifles and a shotgun in the attic access above the garage. Two of these rifles were readily able to accept both the oil filter-

5

type and solvent trap-type silencers. Additionally, law enforcement found two oil-filter suppresser adapters used to fit the oil filter-type silencer on to the barrel of a rifle.

21. The five solvent trap-type silencers featured threading on an interior hole on the distal end of the silencer configured to accept the barrel of a firearm such as an AR-15. Based on my training and experience and the investigation to date, the solvent trap-type silencers found at the Premises function as silencers by attaching them to the distal end of a firearm barrel. Law enforcement determined that the solvent trap-type silencers found at the Premises could be installed on the AR-15 upper receiver and other rifles found at the Premises.

22. Similarly, the oil filter-type silencers featured threading on an interior hole on the distal end of the silencer configured to accept the barrel of a firearm such as an AR-15 or pistol. Based on my training and experience and the investigation to date, these oil filter-type silencers function as silencers when attached to the distal end of a firearm barrel. Law enforcement determined that the oil filter-type silencers could in fact be installed on the distal end of barrel of a pistol and rifle found at the Premises.

23. Based on my training and experience and the investigation to date, the end cap-type silencers can be fitted onto the ends of a solvent trap-type silencer, rifle, or pistol.

24. Photographs were taken of the silencers found at the Premises.



25. On or about October 1, 2022, law enforcment interviewed **Baunach**. Law enforcement advised **Baunach** of his *Miranda* rights, and **Baunach** agreed to waive them and speak with law enforcement officers. **Baunach** stated that on September 29, 2022, Katie Baunach contacted him and said she needed gasoline for her vehicle. **Baunach** stated that Katie Baunach arrived at his residence later that evening, and that soon after she arrived, he and Katie Baunach got into an argument over another woman. **Baunach** said he went to sleep because he did not want to argue, and when he woke up, Katie Baunach was gone. He stated he moved Katie Baunach's vehicle off of his property. He admitted to being angry that Katie Baunach filed for and received a domestic violence injunction against him.

26. Law enforcement told **Baunach** that blood was discovered inside the trunk of his vehicle. **Baunach** said there should not be blood in the vehicle and if there was, it was due to groceries that he had transported. When asked about the blood found inside the Premises, **Baunach** stated that he did not believe the officers. When asked about the broken mirror found in the office of the Premises, **Baunach** explained that he bumped into it while walking down the hall and caught it so only the frame was broken. During the interview, **Baunach** said they "did not have a body" of Katie Baunach and disputed that she was actually a missing person.

27. **Baunach** admitted to possessing the thirteen silencers found at the Premises but disputed they were actually silencers.

28. On or about October 1, 2022, law enforcement searched the property grounds surrounding the Premises. Law enforcement discovered the fragment of a human mandible with an intact tooth in a fresh burn pile, and discovered a blue fifty-gallon barrel near the burn pile which reeked of decaying flesh. Inside the blue fifty-gallon barrel, law enforcement discovered an additional human bone fragment. Law enforcement discovered other suspected human bone fragments in the area surrounding the burn pile.

29. Your Affiant contacted the ATF Firearms and Ammunition Technology Division who then analyzed photographs of the thirteen silencers found at the Premises and concluded they were silencers within the meaning of the National Firearms Act and under federal law, and therefore where subject to regulation and the provisions of 26 U.S.C. §§ 5861 and 5871.

30. ATF Agents performed a records check and determined that **Baunach** had not registered the silencers under the National Firearms Act and not received a tax stamp as required by law. Additionally, ATF agents searched the National Firearms Registration and Transfer Record, and no record was found that the silencers found at the Premises were registered to **Baunach**. Additionally, **Baunach** did not have a Federal Firearms License (FFL).

31. Your Affiant inspected the firearms and silencers discovered at the Premises and determined that the silencers could readily be attached to multiple firearms.



*Figure 1 - AR-15 Upper Receiver with Solvent Trap-Type Silencer Attached to Barrel*



*Figure 2 - Sig Sauer M400 300 Blackout Rifle with Oil Filter-type Silencer Attached to Barrel using Oil Filter Adapter*



*Figure 3 - Glock 27 Pistol with Solvent Trap-Type Silencer Attached Thereto*

## CONCLUSION

32. Based on the foregoing, there is probable cause to believe that **Baunach** has committed the crime of possessing a firearm which is not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5861(d) and 5871.

Respectfully submitted,

_____ #5198
Gary E. McKiever
Special Agent, ATF

Sworn to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 and 4(d)(3) via telephone on this 7th day of October 2022.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge